STEVENSON v. ILLINOIS CENT. R. CO. et al.

(Circuit Court, W. D. Kentucky. December 9, 1911.)

1. REMOVAL OF CAUSES (§ 92*)—PROCEEDINGS—FILING PETITION AND BOND IN STATE COURT—FILING TRANSCRIPT IN UNITED STATES COURT.

Where a petition and bond for the removal of a cause is presented to a state court and the bond approved but the petition overruled, whereupon a transcript of the record is filed and the case docketed in the federal Circuit Court, the removal is complete notwithstanding the action of the state court, unless the averments of the petition for removal, assuming them to be true and taken in connection with the other parts of the record, showed a nonremovable case.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 190; Dec. Dig. § 92.*]

2. REMOVAL OF CAUSES (§ 49*)—SEPARABLE CONTROVERSY—JOINDER OF CORPORATION AND SERVANTS.

Where plaintiff in good faith has elected to sue jointly in tort a foreign corporation and its citizen servants, whose misconduct caused the injury complained of, such joinder does not present a separable controversy between plaintiff and the corporation which is removable as to the nonresident defendant, without regard to the citizenship of the residents.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 95–99; Dec. Dig. § 49.*

Separable controversy, ground for removal of cause, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155; Pollitz v. Wabash R. Co., 100 C. C. A. 4.]

3. REMOVAL OF CAUSES (§ 107*)—FRAUDULENT JOINDER OF PARTIES TO PREVENT—BURDEN OF PROOF.

Where a petition for removal stated sufficient grounds and charged a fraudulent joinder of resident defendants to prevent a removal by a nonresident defendant, and issue was joined thereon, the burden of proving fraudulent joinder was on the removing defendant.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 230; Dec. Dig. § 107.*

Fraudulent joinder of parties to prevent removal, see note to Offner v. Chicago & E. R. Co., 78 C. C. A. 362.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. REMOVAL OF CAUSES (§ 107\*)—FRAUDULENT JOINDER OF PARTIES TO PRE-VENT—DETERMINATION.**

Where resident servants of a noncitizen railroad corporation are joined in a suit to recover damages for an alleged joint tort, and the complaint states a joint cause of action against all the defendants and the corporation seeks to remove the cause to the federal court and alleges fraudulent joinder, the question of plaintiff's fraudulent intent cannot be determined from the fact that, on the trial of such issue in the federal court, no cause of action is found to exist against any defendant, resident or nonresident; the case being one in which the negligence of the corporation can be established only by proof of the negligence of the servants alleged to have been fraudulently joined.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 227; Dec. Dig. § 107.\*]

At Law. Action by Charles W. Stevenson, by his statutory guardian, John T. Stevenson, against the Illinois Central Railroad Company and others. On motion to remand. Granted.

O'Doherty & Yonts, for plaintiff.
Trabue, Doolan & Cox and L. A. Faurest, for defendants.

EVANS, District Judge. The plaintiff, Charles William Stevenson, a citizen of Kentucky, and an infant suing by his statutory guardian, John T. Stevenson, brought this action in the Grayson circuit court (which we shall call the state court), and, after stating in his petition that the defendant Illinois Central Railroad Company (hereinafter called the Railroad Company) was a corporation operating a railroad in Jefferson county, Ky., and that one of its tracks extended across the Seventh street road to the Avery plow plant, a short distance south of the limits of the city of Louisville, made averments as follows:

"Plaintiff says that on the 19th day of February, 1910, the said Illinois Central Railroad Company and the said Charles Pendleton and Joseph Warren so in charge of and operating said switch engine and cars did by their joint concurrent wrongful act and negligence, and by the concurring negligence of other agents of said Illinois Central Railroad Company in its service and under its control, wrongfully and negligently create and place a dangerous obstruction and embankment of snow and ice on the south side of the said railroad track or switch and on and across said Seventh Street road, a public highway of said Jefferson county as aforesaid; that said snow and ice were by the defendants and by other agents and servants of said Illinois Central Railroad Company removed from its tracks on said public highway, and by their concurrent negligence, wrongful and unlawful acts embanked across said public road on the south side of said track, and created a dangerous obstruction thereon, liable to cause persons using said highway to fall upon said railroad track and under passing trains, but the dangerous nature thereof was at the time unknown to this plaintiff, and was known to defendants, or could have been known to them, and to each of them, by the exercise of ordinary care.

"Plaintiff says that on the said 19th day of February, 1910, he, said Charles William Stevenson, was walking along the said Seventh Street road on his way to the city of Louisville; that there was a deep snow at the time on said road; that as he approached the railroad track or switch of the defendant the said Illinois Central Railroad Company where it crosses said public road an engine and some freight cars of said defendant company in charge of the defendants Charles Pendleton and Joseph Warren were passing westwardly upon said track, and across said public road; that affiant stopped upon the said highway three or four feet from said train to

allow it to pass, and that, as he did so, the snow and ice, which the defendants had wrongfully and negligently placed on said highway, gave way under plaintiff's feet, and he was thereby, by and through the concurrent negligence and wrongful acts of the defendants, precipitated forward towards the moving cars and caused to fall.

"Plaintiff says that to save himself from injury, if possible, he grabbed at and succeeded in catching hold of some part of the appliances of one of said cars; that he held to the same, and was pulled from said point a distance of about 70 feet, when his right leg was caught and run over by the wheel or wheels of one of said cars.

"Plaintiff says that as soon as he fell, and was precipitated towards said train, as herein set out, he and others, who witnessed his peril, yelled to those in charge of said train and engine, the defendants Charles Pendleton and Joseph Warren, to stop said train, and loud enough to be heard by them and each of them, and in time to have enabled said Pendleton and Warren, by the exercise of ordinary care, to have stopped the movement of said train in time to avoid injuring the plaintiff; but plaintiff says that defendant and its said agents, said Pendleton and Warren, wrongfully and negligently kept up the movement of said train until the wheels of said car ran over plaintiff's leg as herein set out.

"Plaintiff says that, by reason of the wrongs and injuries herein complained of, he suffered the loss of his right leg, which had to be amputated to save his life; that he suffered great pain and agony, both mental and physical, and permanent disfigurement, and permanent reduction of his power to earn money, and that he has been thereby damaged in the sum of thirty thousand dollars ($30,000.00).

"Plaintiff says that the wrongs and injuries herein complained of were caused and brought upon him by the concurrent wrongful acts and negligence of the defendants, and each of them, and by the concurrent negligence of other agents and servants of the defendant, the Illinois Central Railroad Company."

The Railroad Company, showing itself to be a citizen of the state of Illinois, under the laws of which it was incorporated, filed in the state court a petition for the removal of the action to this court and also a bond, the stipulations of which conform to the requirements of the statute.

[1] The state court approved the bond, but overruled the motion to remove the action. The railroad company filed a transcript of the record, and thereupon the case was docketed here. In many instances the Supreme Court has held that the removal under such circumstances was complete notwithstanding the action of the state court, unless the averments of the petition for removal, assuming them to be true and taken in connection with the other parts of the record, showed a case which was not removable under the statutes. Marshall v. Holmes, 141 U. S. 595, 12 Sup. Ct. 62, 35 L. Ed. 870; Chesapeake & Ohio R. R. Co. v. McCabe, 213 U. S. 216, 217, 29 Sup. Ct. 430, 53 L. Ed. 765; Traction Company v. Mining Companies, 196 U. S. 239, 244, 25 Sup. Ct. 251, 49 L. Ed. 462. The subject is also very clearly discussed in the cases of Donovan v. Wells Fargo & Co., 169 Fed. 363, 94 C. C. A. 609, 22 L. R. A. (N. S.) 1250, and McAlister v. C. & O. R. R. Co., 157 Fed. 740, 85 C. C. A. 316.

Shortly stated, the grounds alleged for the removal were, first, that there was disclosed by the plaintiff's petition a separable controversy between the plaintiff and the Railroad Company which could be fully determined without the presence of the defendants Charles Pendleton and Joseph Warren (both of whom are citizens of Kentucky and whom

we shall call the resident defendants) as parties to the action; and, second, that the two last-named defendants were fraudulently joined as such for the sole purpose of preventing a removal of the case to this court.

[2] So far as the claim to remove is based upon the single ground of separable controversy arising in this action against an employer and two of its employés and against all of whom acts of joint negligence are averred, we need only refer to the cases of Alabama Southern Ry. v. Thompson, 200 U. S. 206, 26 Sup. Ct. 161, 50 L. Ed. 441, and Cincinnati, etc., Ry. Co. v. Bohon, 200 U. S. 221, 26 Sup. Ct. 166, 50 L. Ed. 448, which overruled upon this point what were once familiarly known in this circuit as the Warax and Hukill Cases, 72 Fed. 637 and 745.

But for reasons soon to appear more elaborate treatment may be given the other ground alleged for the removal sought. The Railroad Company states that ground in its petition for a removal in this language, namely:

"Your petitioner further states that notwithstanding the controversy herein is between the said plaintiff and your petitioner, and that your petitioner's codefendants are not necessary parties, and that neither of them is a necessary party to the determination of said controversy or of this action or of any controversy therein, the said plaintiff, through his said guardian, has in his petition, nevertheless, united with your petitioner as its codefendants Charles Pendleton, who was at the time of the plaintiff's said injury your petitioner's engine foreman, and Joseph Warren, who then was your petitioner's engineer, and both of whom, said Pendleton and Warren, were at the commencement of this action citizens of the state of Kentucky, and were when the said plaintiff was injured upon the said engine in the exercise and discharge of their duties to your petitioner, and that neither of them placed ice or snow or any obstruction or embankment or dangerous obstruction or embankment on or across the Seventh Street road mentioned in the petition, and that this was well known to the infant plaintiff and his guardian aforesaid when they made the allegations contained in the petition. And your petitioner further states that it is not true that snow and ice placed by your petitioner's codefendants or either of them on or across Seventh Street road gave way under plaintiff's feet or that he was thereby precipitated toward the moving cars of your petitioner or caused to fall; nor is it true that, to save himself, he grabbed at or succeeded in catching hold of one of the appliances of said cars, and that, when said allegations were made in plaintiff's said petition, plaintiff and said guardian well knew that they were not true; nor is it true that said infant plaintiff or other persons witnessing his peril yelled to your petitioner's codefendants or either of them, or yelled loud enough to have been heard by them, or either of them, or to have enabled them, or either of them by the exercise of ordinary care to have stopped the train in time to avoid injuring the plaintiff; nor that they or either of them wrongfully or negligently kept up the movement of said train until the wheels of said car ran over the plaintiff's leg as alleged in the petition. And your petitioner states that said infant plaintiff and said guardian, when they made the allegations aforesaid in their said petition, well knew that they were not, and that none of them was, true, and that they did not expect to prove or establish them or any of them upon the trial of this case, but made all the said allegations for the purpose and solely for the purpose of stating upon the face of their petition, regardless of the facts and the truth, such case as could not be removed by your petitioner to the United States Circuit Court for the Western District of Kentucky, and made such allegations and all of them in fraud of the jurisdiction of said United States Circuit Court.

"Your petitioner further states that his codefendants were at the time the

infant plaintiff received the injuries mentioned in his petition in charge and operation of your petitioner's engine and a cut of freight cars upon your petitioner's railroad crossing the Seventh Street road mentioned in the petition, and that the infant plaintiff and his companion approached the said railroad on the said Seventh Street road desiring and intending to catch your petitioner's cut of cars and to ride thereupon from said Seventh Street road to the plant of the North Vernon Lumber Company, about three-quarters of a mile distant, and that in furtherance of said desire and design of said infant plaintiff, and without notice to your petitioner or its codefendants or either of them, he, said infant plaintiff, grabbed one of your petitioner's cars while it was in motion as, and when, it crossed the Seventh Street road, and was dragged until he fell therefrom and received the injuries complained of, or such of said injuries as were actually received, without any fault on the part of your petitioner or its codefendants, all of which was known at the time the said plaintiff and his guardian made the allegations contained in his petition aforesaid, and that your petitioner's codefendants were joined and all allegations concerning them made in fraud of the jurisdiction of the United States court aforesaid and to deprive your petitioner of the right granted by the Constitution and laws of the United States to remove this action to the United States Circuit Court aforesaid."

[3] The plaintiff has moved the court to remand the action, and by an answer filed has denied the averments of the petition for a removal. Upon the issues of fact thus formed the defendant Railroad Company had the onus, and much testimony was heard by the court, most of which bore upon the merits of the case as well as upon the grounds alleged for its removal to this court. It is obvious, however, that this must always be the case, for, unless the general facts connected with the happening of the events out of which the cause of action arose are shown, the issues made upon the petition for removal cannot be intelligently determined.

The court from the testimony finds the facts applicable to the right of removal to be as follows: That the plaintiff was a young man about 19 years of age at the time of the accident; that about 11 o'clock in the daytime on February 19, 1910, he approached to within about three feet of a plainly to be seen moving train on the track of the Railroad Company at the crossing of the highway known as the Seventh Street road; that he slipped upon the snow that had been very recently removed by other servants of the Railroad Company from the railroad track and piled up on the highway to a height of about 18 inches near the track, and which snow so piled was plainly to be seen by him; that when he, in this situation, slipped and fell he was so close to one of the cars in the train that in the act of falling one of his hands "grabbed" a handhold on the side of the car, by which means he was pulled along with the train until he struck a post standing near the track, whereby he was thrown under the car which stopped so soon thereafter that one of its wheels rested upon plaintiff's leg, causing the ultimate loss of a part of that limb; that while he cried out after he had gotten his hold upon the car, as did other persons not connected with the railroad who saw the situation, it was not possible to stop the train soon enough after those in charge of it saw the danger or learned of it to avoid the injury to plaintiff; that it thus appeared that it was his own negligence or contributory negligence in approaching too near to a plainly visible moving train, and in getting on a plainly visible pile of snow lying very close to the track,

that brought the calamity upon plaintiff; that the injury to him would not have occurred but for these negligent acts of his own; that these facts were perfectly well known to him when he brought this action, but that he shut his eyes to them. The court further finds under these circumstances the fact to be that plaintiff had no just claim to recover against the resident defendants, that he must have known that his claim against them was fictitious, and that he nevertheless joined them as defendants without expecting to recover from them, but with the intent to prevent a removal of the case to this court by the Railroad Company. The joinder of the resident defendants with the Railroad Company under these circumstances must be regarded as, in fact, a fraudulent attempt upon a fictitious claim to prevent a removal of the case, and not as an effort made in good faith to recover against them.

[4] In view of the case presently to be mentioned, we have not based the foregoing findings upon it, but we could not fail to note the otherwise very suggestive circumstance that, though in the petition for removal the Railroad Company made the distinct charge that the plaintiff's sole intent in joining the resident defendants was to prevent a removal, yet the plaintiff and his father, who is also a plaintiff in the petition, were each silent about a matter presumably better known to them than to anybody else, namely, the real intent with which the joinder was made. The father did not testify, but the son did, and made no statement upon this phase of the case.

The Supreme Court said in Wecker v. National Enameling Co., 204 U. S. 185, 186, 27 Sup. Ct. 188, 51 L. Ed. 430, that:

"While the plaintiff, in good faith, may proceed in the state courts upon a cause of action which he alleges to be joint, it is equally true that the federal courts should not sanction devices intended to prevent a removal to a federal court where one has that right, and should be equally vigilant to protect the right to proceed in the federal court as to permit the state courts, in proper cases, to retain their own jurisdiction."

Assuming the question in such cases to be whether the allegations of the plaintiff's petition which give the right to a joint action in the state court were falsely and fictitiously made without the intention or expectation of proving them, but with the sole purpose of avoiding federal jurisdiction, it has heretofore been the practice to hear testimony thereon. And in this connection it may be well to note as an illustrative circumstance that the Court of Appeals of Kentucky in Chiles v. Drake, 2 Metc. 149, 74 Am. Dec. 406, stated an established general rule of pleading in that state in this language:

"In actions for personal injuries resulting from negligence, it has always been regarded as sufficient for the plaintiff to allege, in general terms, that the injury complained of was occasioned by the carelessness and negligence of the defendant. He has not been required to state the circumstances with which the infliction of the injury was accompanied in order to show that it had been occasioned by negligence. An allegation of the extent of the injury, and of the manner in which it was inflicted, has been always regarded as sufficient."

From this it is obvious that it was not necessary in this case for the plaintiff in his petition against the employer to state the particulars of the alleged negligence of its servants, nor to join with a great

corporation its almost inevitably indigent employés as its codefendants in a suit where it is primarily liable. The plaintiff, however, had the technical right to join whom he pleased as defendants, but the statement of the acts of individual employés who are citizens of Kentucky exposed the plaintiff to the charge made in this case that he did so with intent to prevent a removal, especially as it might well be expected to turn out that there was not the slightest anticipation of ever getting a dollar from them. It might well be as matter of fact that the plaintiff by preventing a removal might thus avoid the operation of rules well established in the federal jurisprudence in respect to assumed risks, nonliability for the negligence of fellow servants, contributory negligence, and the like, should the principles of federal jurisprudence in these respects differ from those of a state. At all events, in many cases an inquiry into the motive of the plaintiff in joining local defendants with a nonresident defendant has been sustained. See for examples the cases of Wecker v. National Enameling Co., 204 U. S. 176, 184, 186, 27 Sup. Ct. 184, 51 L. Ed. 430; Hukill v. Railroad Co. (C. C.) 72 Fed. 745; Diday v. New York, etc., R. R. Co. (C. C.) 107 Fed. 567; Arrowsmith v. Nashville, etc., R. R. Co. (C. C.) 57 Fed. 169; and Gustafson v. Chicago, etc., Ry. Co. (C. C.) 128 Fed. 87. Heretofore those courts which came most closely to the hearing of the testimony upon questions of this character, and who were well acquainted with actual local situations, were accustomed to regard certain things as badges of a fraudulent intent to prevent a removal, and in many cases the charge that such intent existed seems to have been established without difficulty. But since the decision by the Circuit Court of Appeals of this circuit of the case of Fannie Enos, Administratrix of Chas. T. Enos, Deceased, v. Kentucky Distilleries & Warehouse Co. and Others (C. C. A.) 189 Fed. 342, such a result appears no longer to be possible where the plaintiff's petition or declaration on its face states a cause of action against resident defendants as well as against their nonresident employer. However false and fraudulent such statements (not as to constitutional or statutory rights, but as to joint negligence) might, in fact, be, proof of their character in this respect cannot now effectively be made. Indeed, if a cause of action be formally stated against resident defendants who are joined with a defendant who is a citizen elsewhere, we cannot, in this circuit, regard the motive of the plaintiff as any longer open to question. In such cases the attitude of the plaintiff must be regarded as invulnerable per se, and as not open to attack because (as there held) to say that the resident defendants were fraudulently joined is to say that the suit was fraudulently brought against the removing defendant as well. We say this because in the Enos Case the Circuit Court of Appeals, after stating its view of the facts, which somewhat differed from that of the trial court, explicitly said:

"From these facts it is apparent that, if the distillery company and Julius Kessler & Co. were liable for decedent's injuries, it is because of the negligent acts of O'Hearn and Bittner, one or both. In other words, if neither of them was negligent, defendants would not be liable; and, if either were properly joined, the case was not removable. According to the settled law in Kentucky, the servant whose negligent act creates the liabili-

ty of the corporation may as a matter of right be joined as defendants with the corporation. Cincinnati & T. P. Ry. Co. v. Bohon, 200 U. S. 221, 223 [26 Sup. Ct. 166, 50 L. Ed. 448]; Winston's Adm'r v. Illinois Central R. R. Co., 111 Ky. 954, 957 [65 S. W. 13, 55 L. R. A. 603]. To assert, therefore, that O'Hearn and Bittner were not liable for the decedent's injuries is but another way of asserting that neither the distillery company nor Kessler & Co. were liable. Indeed, the Circuit Court in denying the motion to remand practically found that plaintiff was affirmatively shown to have no cause of action against any of the defendants. The assertion of fraudulent joinder of O'Hearn and Bittner necessarily involves the proposition that the cause of action against even the resident defendants was fraudulently asserted. But the rule which permits a removal to the federal court in case of the fraudulent joinder of defendants whose presence destroys diversity of citizenship cannot be carried to the extent of permitting such fraudulent joinder to be inferred from the fact only that no cause of action is found to exist against any defendant, resident or nonresident, or of permitting removal in a case where the negligence of the corporate defendant can be made out by proof of negligence of the servant alleged to be fraudulently joined, but against whom a cause of action is stated."

And after quoting from the opinions of the Supreme Court in the Sheegog and Willard Cases, presently to be specifically named, and expressing its agreement with the Circuit Court that on its face the plaintiff's petition stated a cause of action, the Circuit Court of Appeals said:

"We are therefore constrained to hold that, under the undisputed facts of the case, Bittner and O'Hearn were, *as matter of law, properly joined*, and *thus* the allegations of fraudulent joinder as to those defendants were not sustained." (Italics ours.)

The force of this unmistakable language becomes the more apparent, at least in this district, from the fact that the trial court had sustained its jurisdiction upon the ground that in its opinion the testimony heard on the motion to remand showed that the plaintiff had no real cause of action nor any possible right to recover against the resident defendants in that suit, inasmuch as it thought, among other things, that it was made plain by the testimony, first, that the decedent came to his death, not by the negligence of the defendants, but by reason of his own negligence in not avoiding an obvious danger, and under circumstances where he had assumed the ordinary risks of his vocation; and, second, that the plaintiff (the mother of the deceased) knew those facts or could have known them if she had made inquiry, instead of shutting her eyes. The trial court in its opinion in that connection had pointed out that the Supreme Court in Wecker v. National Enameling Co., 204 U. S. 185, 27 Sup. Ct. 188, 51 L. Ed. 430, had said that "in cases where the direct issue of fraud is involved knowledge may be imputed where one willfully closes his eyes to information within his reach." The fraud alleged in the Enos Case had respect to the joinder of local defendants, and Mrs. Enos had closed her eyes.

The trial court in its opinion had said:

"We think that the plaintiff has no right to recover against O'Hearn and Bittner; that, unless she shut her eyes, she must have known it; that she had no right to shut her eyes, and that she did not testify and show her motive or negative the presumptions fairly to be drawn from the testimony, and from a failure on her part to contradict it, and to state the exact mo-

tives operating upon her in making the citizens of Kentucky defendants. We may fairly draw our conclusions. Much experience in passing upon similar issues is of some value, as the court thinks, and we conclude that the testimony supports the averments of the petition for removal as to all of the citizens of Kentucky."

It therefore overruled the motion to remand. Some months later, when the case was tried on the merits as between the plaintiff and the removing defendants, the trial court, in charging the jury, said:

"The court thinks that no actionable negligence has been shown by the testimony against either of the following defendants, namely, Kentucky Distilleries & Warehouse Company, Julius Kessler & Co., Julius Kessler, and Raymond G. Shipman. The court thinks that, if any negligence caused the death of Charles Thomas Enos, it was either that of his fellow servants or his own, in either of which contingencies, upon established principles of law, the plaintiff is not entitled to recover. Besides, any risks incident to the work in which plaintiff's intestate was engaged in defendant's warehouse so far as this case calls for their consideration were such as were obvious, and also such as were assumed by the decedent, as an experienced workman, when he went into the defendant's employment."

The Circuit Court of Appeals had before it the whole record, alike upon the motion to remand and upon the final hearing, including the opinion and charge referred to. One part of the record bearing upon the one question was likely to reflect upon the other, though very different issues were under consideration at the respective times, for, while on the motion to remand only the fraudulent intent of the plaintiff in joining the local defendants was investigated or decided, at the final trial the merits of the controversy were heard and determined as between the plaintiff and the nonresident defendant. See Kansas City, etc., Ry. Co. v. Herman, 187 U. S. 69, 23 Sup. Ct. 24, 47 L. Ed. 76. In considering the questions which arose on the motion to remand, the Circuit Court of Appeals apparently attached no importance to testimony tending to show manifest negligence or contributory negligence upon the part of Enos, and none to the proposition that there could, in the legal sense, be a fraudulent joinder of local defendants to affect that phase of the case. It, in substance, held, as we view it, that, if only a cause of action be stated by the plaintiff, his case is inaccessible to any considerations of that character. Nor did the court appear to give any importance to the fact that the plaintiff in that case shut her eyes to the real facts in selecting the persons she would sue. And, commenting upon plaintiff's failure to testify on the hearing of the motion to remand, the court said that it was "unnecessary to consider the probative effect of plaintiff's failure to testify to her good faith in joining the resident defendants." The charge of fraud in that connection, and the facts supposed to show it, had been very explicitly stated in the petition for removal, and the plaintiff had closed her mouth as well as her eyes. Apparently regarding these things as negligible quantities, the Circuit Court of Appeals used the language we have quoted from its opinion—language which the facts we have stated appear greatly to emphasize.

It is insisted that the facts in the Enos Case essentially differ in all substantial respects from those in the Sheegog and Willard Cases.

That is quite true. In those two cases it appeared that the laws of Illinois and Kentucky, respectively, upon grounds of public policy, expressly made a lessor corporation jointly liable with its lessee for injuries incurred in the operation, use, or enjoyment of the property leased. In neither case was there any dispute that the lease had actually been made. Consequently the joint liability of lessor and lessee was incontrovertibly ascertained in advance, and was as fixed as if both had jointly contracted in writing to that effect. It therefore followed that, if one of them was joined fraudulently, so was the other, inasmuch as both were equally liable by reason of the law and the lease. Manifestly there was nothing of that sort in the Enos Case. Nevertheless the Circuit Court of Appeals, in deciding that case, expressly did so upon the authority of the Sheegog and Willard Cases. In the Enos Case the joint liability depended alone upon the truth of the assertion by the plaintiff of the extraneous and issuable allegation of joint negligence. If in any case joint negligence is in good faith asserted, and if in like good faith relief be claimed thereon in the plaintiff's petition, then in recent years there had been no dispute that the joinder of resident with nonresident defendants was efficient to prevent a removal. But if the allegation of negligence made against the resident defendant be untrue in fact, if with knowledge of its untruth that allegation is nevertheless made by the plaintiff with no expectation of proving it, but with the intent upon his part to prevent a removal, it has always heretofore been held in this circuit that there was a plain and manifest fraud which should not deprive the nonresident defendant of the right to remove the case. The Circuit Court of Appeals in the Enos Case, however, did not so hold, and we must conclude that it declined to do so because of the rulings of the Supreme Court in the Sheegog and Willard Cases, which the Circuit Court of Appeals apparently regarded as having, at least in effect, overruled Wecker v. National Enameling Co., to say nothing of the Warax and Hukill Cases, which, upon this proposition, had theretofore never been overturned.

There would seem to be two opposing theories or principles pervading the decided cases. The first is that, if the plaintiff (who may lawfully join whom he pleases) states a cause of action for injuries inflicted by negligence against a resident defendant whom he joins with a nonresident defendant, then he must be taken at his word without further question when a petition by a nonresident defendant for a removal comes under consideration, even if what the plaintiff has said as to the negligence of the resident defendant were to his knowledge false and made for the sole purpose of preventing a removal of the case. The second is that the nonresident defendant may look behind the statements made by the plaintiff against the resident defendant, and if those statements be in fact false, and if the plaintiff when he made them knew them to be false, but nevertheless asserted them in his pleading in order to prevent an exercise by the nonresident defendant of his lawful right to remove, then the plaintiff under such a state of fact who knowingly makes a false and fictitious claim against the resident defendants should be regarded as intentionally perpetrating a fraud upon the jurisdiction of the court and upon the

nonresident defendant, by means of which it was intended to prevent a removal, and the courts should be astute to prevent the success of such fraudulent movements, and should not permit a nonresident defendant to be cheated out of a substantial right by a mere trick of pleading. The first of these theories seems to be the one which was pronounced sound by the Circuit Court of Appeals of this circuit in the Enos Case upon its interpretation of the rulings of the Supreme Court of the United States in Illinois Central R. R. Co. v. Sheegog, 215 U. S. 308, 30 Sup. Ct. 101, 54 L. Ed. 208, and in Chicago, etc., Ry. Co. v. Willard, 220 U. S. 413, 31 Sup. Ct. 460, 55 L. Ed. 521, which cases are the latest deliverances upon the subject. The second of the theories mentioned seems to have prevailed in Wecker v. National Enameling Co., 204 U. S. 176, 27 Sup. Ct. 184, 51 L. Ed. 430, and in the cases which preceded it, to some of which we have referred, and also in many cases previously decided by the Circuit Court of Appeals of this circuit, notably the Warax Case and the Hukill Case in 72 Fed. 637 and 745. In this situation there is nothing for this court to do but to follow the latest deliverance, which was that in the Enos Case. We have endeavored to reach a correct understanding of what it decides, with the result indicated. Whether that decision conforms to the Sheegog and Willard Cases, or whether it is contrary to the Wecker Case, or whether the latter accords with the former, is not for us to consider. The Enos Case is unambiguous, and we must, of course, yield to its authority. The extremely urgent insistence by defendant's counsel that this case is distinguishable from the Enos Case has seemed to excuse a somewhat extended analysis of the latter in order to show how certainly it must govern here. What we have said will also serve to explain precisely why our present judgment must differ from many others we have rendered.

It is pointed out, however, by counsel that the plaintiff's petition in the case now before us not only imputes to the resident defendants Pendleton and Warren the negligence by which the plaintiff is alleged to have been injured, but also imputes it to "other agents and servants of the" railroad company. While this is true, and while that per se would have made the pleading good as against the railroad company without any mention of Pendleton and Warren by name, it cannot under the ruling in the Enos Case make this case removable, for the reason that the resident defendants are, like the plaintiff, citizens of Kentucky. A cause of action being stated against them, and there not existing as between them and the plaintiff the necessary diversity of citizenship, and a charge of fraudulent joinder, however true in fact, not being efficient to meet such a situation, there can be no removal as we view the ruling in the Enos Case.

Under that ruling, and inasmuch as a cause of action is technically stated by the plaintiff against the resident defendants, the facts, as we have herein found them, seem to be ineffective and immaterial, and it results that the plaintiff's motion to remand the action to the Grayson circuit court must be, and it is sustained, however much this ruling may differ from many previously made by this court.