## Cincinnati, New Orleans & Texas Pacific Railway Company, et al. v. Daniels' Admx.

(Decided January 5, 1912.)

### Appeal from Lincoln Circuit Court.

Master and Servant—Personal Injury—Railroads—Action for Damages—Employee When Not a Volunteer or Trespasser.—Decedent was a rear brakeman on a freight train. His caboose was out of repair. He and his conductor were engaged in equipping another caboose with supplies. For this purpose the supplies were carried to a point near one of the switching blocks in the railroad yards. The switching crew had charge of the caboose to be supplied. Decedent got upon the caboose to indicate to the switching crew where to spot the cabooes. This was customary. Held that although decedent was not being paid for his work, he was engaged in the performance of work of a preparatory character which it was customary for the rear brakeman to do and which had to be done, and was thus serving his master in the spirit of a faithful employee, and that being true, he was not a trespasser or volunteer, but was entitled to the same protection and required to use the same degree of care as an ordinary switchman similarly situated.

JOHN GALVIN, K. S. ALCORN, J. W. ALCORN for appellants.

ROBERT HARDING, DENTON & FLIPPIN, J. W. RAWLINGS, W. S. BURCH and EMMETT PURYEAR for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On August 14, 1906, Thomas L. Daniels fell from a cut of cars that were being switched in the Somerset yards of the Cincinnati, New Orleans & Texas Pacific Railway Company and was killed. Charging that his death was occasioned by a sudden, unusual and unnecessary jerk of the train, this action was brought by his administratrix against the railway company and its

engineer, George Colson, to recover damages. A trial before a jury resulted in a verdict for $6,800.00 in favor of plaintiff against the railway company, and $200.00 against Colston. From the judgment predicated thereon the railway company and Colston appeal.

At the time of the accident, Daniels' regular position was that of rear brakeman on a freight train. The caboose, which was attached to his train, was out of repair, and it was necessary to procure another caboose. Just prior to the accident Daniels, together with his brother-in-law, Cabell, and his conductor, Buck Tucker, were engaged for an hour and a half or two hours in bringing from a store house to one of the tracks in the yard the necessary supplies with which to equip the new caboose. These supplies consisted of brasses, chains, indicators, flags, jacks, etc., and were to be put into the caboose so it would be ready to go out on Daniels' train. After the supplies had been placed near the track, Daniels said to Tucker, "I will go over and get the caboose and have them stop the caboose at this place so we can load the supplies." Tucker, the conductor, remarked, "all right." Daniel then went straight across to the cars and climbed up on the caboose. At that time the caboose was being switched in the yard, and composed one of a cut of cars. First there were three empty cars, then the caboose, then two gondolas, then the engine. The cut was being shoved by the engine and was moving north. The switching crew was composed of the yard foreman and two switchmen, and the engineer and fireman in charge of the yard engine. When Daniels reached the cut of cars he climbed upon the caboose. The engineer saw Daniels just a few seconds before he fell from the car.

One of appellee's witnesses, who had formerly been an engineer, testified that he was within a few feet of the engine when the accident occurred. The engineer applied his straight-air brake valve and at the same time reversed his engine. The effect of this was to cause a very sudden, rough stop, which was not at all necessary. One of appellant's witnesses also testified that he saw Daniels on top of the caboose and that the cut of cars went about five car lengths before he was thrown off. This witness says that when the cars stopped he saw a bulk go forward and fall. Later on he said it was Daniels who fell.

According to the testimony of Colston, the engineer, he made no stop at all until after Daniels fell. Hamilton, another witness for appellant, says that the train was stopped as it went around the curve of the main line. This stop was made on a signal from witness, because some stakes were leaning out from a flat car towards the track the train was on, and he was afraid these stakes would strike the cab.

As the evidence tended to show that no emergency existed which required both the application of the air brake and the reversing of the engine, and that this method of stopping the train caused a sudden, unusual and unnecessary jerk thereof, we conclude that the evidence upon this point was sufficient to justify the submission of the case to the jury.

Appellant's most serious contention is that Daniels, at the time of the accident, was a trespasser or volunteer, and, therefore, not entitled to recover. Upon this point the evidence for appellant is to the effect that Daniels was not on duty at the time he was killed. In procuring the supplies for the caboose, as well as in getting upon the caboose for the purpose of spotting it, he was performing services for which he was not being paid and which devolved upon others. The switching crew, alone, had control of the cars in the yard. It was their duty to see that they were properly placed. The engineer takes signals from the switching crew, and no one else. Daniels had no right at all to signal the engineer. Daniels had no business whatever upon the caboose.

On the other hand, it is shown by the evidence for appellee that the conductor is charged with the duty of seeing that the caboose, before going out upon its trip, is properly equipped. Daniels, in helping to carry the supplies from the store house to the track, was working in company with and under the direction of his conductor. While not drawing any money for his services, he was getting ready for his work. In doing this he and the conductor were following the usual plan of procedure. One witness testifies that it was customary for the rear brakeman to keep supplies on the caboose. He also testifies that it was the duty of Daniels to guide and direct the engineer where to place or spot the caboose for the purpose of taking on supplies.

Under this evidence we can not say that Daniels was a trespasser or volunteer. While, technically speaking, he

was not on duty was, therefore, receiving no pay for his services, yet he was engaged in the performance of work of a preparatory character, which it was customary for the rear brakeman to do and which was absolutely necessary to be done. He was serving his master in the spirit of a faithful employe, and it would be taking too narrow a view of the scope of a servant's duty to hold that, while so engaged, he was not entitled to the same protection from injury as the ordinary employe who is being paid for, and is engaged in the performance of the work for which he was employed.

While there is some criticism of the instructions given, we fail to find therein any errors prejudicial to appellant's substantial rights. The question, whether or not there was an unusual and unnecessary jerk of the train, and one so violent as to show a want of ordinary care on the defendant's part for the safety of the deceased, was fairly presented to the jury. The instructions also imposed upon Daniels, in getting on top of the caboose, the duty of exercising the same degree of care in protecting himself as should have been exercised by a switchman of ordinary care in that position. The jury were further told that the engineer owed to Daniels no greater duty than he owed to the switchmen of his crew, and the instruction then defined what that duty was. The latter instructions were given upon motion of appellant, and were as favorable as appellant was entitled to.

Other alleged errors are relied upon, but we do not deem them of sufficient importance to justify a reversal.

Judgment affirmed.