# Broadway Coal Mining Company v. Robinson.

(Decided November 22, 1912.)

## Appeal from Ohio Circuit Court.

1. Litigant—Motive of Cannot Affect Legal Rights.—It is a well settled rule of law that the motive of a litigant cannot affect his legal rights, since his rights are to be determined by the facts and the law, regardless of his good or bad motive in asserting them.

2. Jurisdiction—Joinder of Nonresident Corporation and Servant—Removal of Action.—The fact that a plaintiff in a suit for damages in a State court joined a nonresident corporation and its servant as defendants, for the purpose of preventing a removal of the action to the Federal Court, does not affect the right of the plaintiff to hold the case in the State court, if the servant was a proper defendant.

3. Jurisdiction — Fraudulent Joinder — Nonresident Corporation — Waiver.—If, after hearing the evidence in the State court, the nonresident corporation defendant conceived that the evidence sustained its charge of fraudulent joinder, it was its duty to renew the motion to remove, and tender its bond anew; and, if it failed to do so, it waived any right it may then have had to remove the case to the federal court.

4. Mines and Mining—Injury to Miner—Peremptory Instruction.—Where a coal miner left the room where he was employed at the direction of the boss driver, and went to another room in the mine to get tools of his own, which the mine through its boss driver had promised to deliver to the miner, and, while on his way to get his tools he was injured by the falling of the roof of the mine, the trial court properly declined to give a peremptory instruction for the defendant.

5. Mines and Mining—Action Against Owner of Mine and Servant.—In a suit against a mine owner and its servant for negligently injuring a miner, where the evidence tended to show that one of the defendants was guilty, and the other not guilty of negligence, the trial court properly instructed the jury that they might find against one defendant, and for the other defendant.

6. Mines and Mining—Action Against Owner of Mine and Servant—Judgment Against Owner—May Assert Against Servant.—Where, in a suit against a mine owner and its servant for negligently injuring a miner, the jury finds against the mine owner and in favor of the servant, the mine owner may recover from the servant whose negligence was the sole cause of the injury, whatever sum it may have paid the miner under the judgment against the company. The judgment in favor of the miner against the mine owner does not preclude the mine owner from asserting its claim against its servant for causing the damage.

7. Personal Injury—Measure of Damages—In actions for personal injury the measure of the damage includes, (1) compensation for

pain and mental suffering; (2) expense in nursing and medical attendance; (3) time lost, and (4) if the injury has lasting effects, permanent diminution of earning capacity.

8. Personal Injury—Imports Pain and Suffering.—Personal injury imports pain and suffering, and to sustain a substantial verdict therefor they need not be proved.

9. Verdict—Where Not Excessive.—Where a coal miner had both legs broken, resulting in the amputation of one of them, accompanied by a long confinement and intense pain and suffering, a recovery of $5,125.00 damages is not excessive.

HINES & NORMAN and BELCHER & SPARKS for appellant.

HEAVRIN & WOODWARD and D. D. FELIX for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellee, Robinson, was injured on August 16, 1910, while employed as a ''shooter'' in appellant's coal mine. He sued the company for damages, joining with it Hugh Chumbley, its boss driver, and John Jones, its mine foreman, and recovered a verdict for $5,125 against the company alone; and from a judgment upon that verdict the company prosecutes this appeal.

The complaint is that the company permitted the entry roof of its mine to become unsafe, and that Jones and Chumbley failed to have it made safe, although they knew its defective condition. Within the time allowed by statute, the company filed a petition to remove the case to the United States Circuit Court, upon the ground that Chumbley and Jones had been fraudulently joined with the company as defendants, for the purpose of preventing the removal. The State court denied the petition for removal; whereupon, the company filed a copy of the record in the Federal court, where the case was tried, and resulted in a peremptory instruction and judgment for the defendant. Upon a motion for a new trial, however, the federal judge set aside the judgment in that court, and remanded the case to the State court. Upon the trial in the State court the plaintiff recovered the verdict for $5,125 above referred to.

Five grounds are relied upon for a reversal; (1) that the State court erred in refusing to remove the case to the Federal court; (2) that the court erred in refusing to peremptorily instruct the jury to find for the defendant; (3) that the court erred in instructing the jury that it could find for the individual defendants and against

the corporation; (4) that the verdict is inconsistent in that it found against the corporation, and for the individual defendants; and, (5) that the verdict is excessive.

The facts are substantially as follows: Robinson went to the mine on the day before the accident and sought employment, which he obtained through Jones, the mine foreman. As the miners were required to furnish their own tools, Robinson bought a part of his tools from Davis, who had been at work in the mine, but was then sick, and laid off, and then went to the company and bought the remainder of the tools which were necessary for the prosecution of his work. Robinson was to work in the 4th west entry, while the tools which he bought from Davis were in the 4th east entry where Davis had left them. He carried the tools which he had bought from the company to the mouth of the mine, and had a tag placed on them showing to what point in the mine they should go. It was the custom of the mine for the company to have the heavy tools, such as the drilling machines, placed in a car and hauled to the point desired by the miner, the loading of the tools on the car to be done by the miner himself. Jones told Robinson to report to Chumbley and he would have the tools delivered in the 4th west entry. This was all done the day before the accident. On the morning of the accident, Robinson and his fellow-laborer Beck, went to the room where they were to work, and without waiting for their tools to reach them, they borrowed a shovel and went to work cleaning up some coal that had been left there. After they had worked in this way for perhaps two hours, and finding they could do no more work without their tools, they started back to the mouth of the mine to see why the tools had not been sent to them. They had gone only a short distance, when they met Chumbley, the boss driver, who asked them where they were going. In answer, they told Chumbley they were going to inquire after their tools, and asked him why he had not sent them. Robinson further told Chumbley of the purchase of the tools from Davis, and inquired how he could get those tools from Davis' room; whereupon Chumbley pointed the way to Davis' room, and told Robinson and Beck to go and get the tools. Davis' room was more than a hundred yards further down the main entry from the room in which Robinson and Beck had been working. After they had gone a short dis-

tance, the slate roof of the main entry fell upon Robinson, breaking his right leg in two places, and crushing his left leg to such an extent that amputation became necessary. This was Robinson's first appearance in the mine.

1. First, as to appellant's right to remove the case to the Federal Court. Appellant contends, and it may be conceded, that the Federal Judge remanded the case to the State court upon the authority of Enos v. Kentucky Distilleries & Warehouse Company, 189 Fed., 342, holding that the negligence of the appellant was predicated solely upon the negligence of the individual defendants, Chumbley and Jones; and, since it further appears from the deposition of counsel for appellee read on the motion to remand, that he made Jones and Chumbley defendants in order to hold jurisdiction in the State court, the joinder was fraudulent, leaving nothing to prevent the removal. It is a sufficient answer to this contention, that the motive for making Jones and Chumbley defendants, can in no way affect appellee's right to make them defendants, if the facts justified it. Appellee may have thought a judgment against Jones and Chumbley would be worthless, and that it would, from that point of view, be useless to join them as defendants; nevertheless, if the injury to Robinson was brought about by the negligence of Jones and Chumbley, they were proper parties defendant, and appellee had a perfect right to join them with the appellant, even though his purpose in so doing may have been to retain jurisdiction in the State court. It is a well settled rule of law that the motive of a litigant cannot affect his legal rights, since his rights are to be determined by the facts and the law, regardless of his good or bad motive in asserting them.

Furthermore, the contention that the appellee was trifling with the court in joining Jones and Chumbley as defendants is not sustained by the evidence. Chumbley unquestionably was guilty of negligence in directing Robinson to go after Davis' tools, if the testimony of Robinson is to be believed. We do not understand it is now claimed that the State court was warranted in removing this case to the Federal Court when the petition for removal was originally filed, since the petition for removal alleged fraudulent joinder in general terms, which were denied, and no proof was taken in the

State court. As the petition, therefore, stated a joint cause of action against the company and Jones and Chumbley, the State court and the Federal court were equally right in holding, on the showing made, that the jurisdiction was in the State court. With the record in this condition the case went to trial in the State court without the petition for removal ever having been renewed, or any motion made for that purpose. If, after hearing the evidence in the State court, appellant conceived that the evidence sustained its charge of fraudulent joinder, it was its duty to renew the motion to remove, and tender its bond anew; and, having failed to do so, it waived any right it may then have had to remove the case to the Federal Court.

In Northern Pacific R. R. Co. v. Austin, 135 U. S., 315, the court said:

"Nothing is better settled than that, to enable us to take jurisdiction on the ground of the denial by a State court of a right claimed under a statute of the United States, the record must show that the right was specially set up or claimed at the proper time and in the proper way, and that the decision was against the right so set up or claimed. Spies v. Illinois, 123 U. S., 131, 8 Sup. Ct. Rep., 40. As the defendant did not apply for the removal of the cause the right now claimed under the statute was not denied by the district court, nor by the Supreme Court in affirming the judgment. If the application had been made the question then would have arisen whether it came too late under the circumstances."

The fact that appellant filed its petition for removal before it was entitled to remove the case under the evidence, does not entitle it to now complain of the jurisdiction of the State court, where it failed to renew the motion after it became entitled to a removal. This precise question was before the United States Circuit Court of Appeals in Jones v. Mosher, 46 C. C. A., 471, 107 Fed., 564, where it was contended that the original petition for removal remaining on file, operated *proprio vigore,* to oust the jurisdiction of the State court as soon as an amended declaration was filed, which, it was contended, then authorized a removal. In overruling that contention the court said:

"We are of opinion that the original petition for removal was *functus officio* when the case was originally

removed and remanded, and that it could not have any effect upon a subsequent amended complaint filed in the case, even if the latter did state a different cause of action arising under federal laws. If such a complaint was filed after the cause was remanded to the State court, it was the duty of the defendants to have prepared and filed a second petition and bond for removal, addressed to the new or amended complaint, and to have prepared and filed such petition and bond within the period heretofore indicated."

Moreover, the propriety of joining Chumbley and Jones as defendants is not to be tested by the hard and fast rule of their liability, but by the question whether or no plaintiff had reasonable grounds to supopse the liability was joint at the time the suit was filed. If he did, the liability or non-liability of the individual defendants was immaterial.

In Stevenson v. I. C. R. Co., 192 Fed., 965, the court said:

"If in any case joint negligence is in good faith asserted, and if in like good faith relief be claimed thereon in the plaintiff's petition, then in recent years there had been no dispute that the joinder of defendant with non-resident defendants was efficient to prevent a removal."

And, in Clark v. C., R. I. & P. R. R. Co., 194 Fed., 505, the court further said:

"Plaintiff urges that all doubts must be resolved in favor of the jurisdiction of the State Court. While this doctrine has been not infrequently announced (Vanderbilt v. Kerr [C. C.], 188 Fed., 537), nevertheless it is not the rule in this jurisdiction (Boatman's Bank v. Fritzlen, 135 Fed., 650, 68 C. C. A., 288). However, the question here is not what the decisions of this court might be as to liability disclosed by the facts in a trial of this case upon the merits, but whether the defendant has so conclusively established by the evidence that the claim of plaintiff is so false, in fact, that the court is forced to the conclusion that the complaint against the employe could not have been presented in good faith. Jacobson v. Chicago, R. I. & P. Ry. Co. (C. C.), 176 Fed., 1004. The point to be determined is whether the plaintiff has acted in good faith in asserting that Murphy should legally respond in damages. If he has, then no fraud has been committed, no matter what the ultimate

outcome may be. In view of the decisions of the Supreme Court of this State, as well as of the state of the law in other jurisdictions, as disclosed by the decisions of the courts of last resort, I do not feel that I am justified in concluding that the plaintiff may not have asserted his claim against the foreman Murphy in good faith, even though he may have had it in mind thereby to prevent the removal of the case to this court."

Finally, the rule of practice upon this point has been recently laid down in C. & O. Ry. Co. v. Banks, 144 Ky., 137, where we said:

"But, in an effort to put at rest any doubt as to the position of this court upon questions like the one presented in this case we hold: * * * (3) If the State court upon the filing of the petition for removal alone, or accompanied with affidavits, declines to order a removal, and the case goes to trial, the non-resident defendant may upon the conclusion of the evidence for the plaintiff or after all the evidence is in, again move the court for a removal; and if, upon hearing the the plaintiff's evidence, or all the evidence, the State court is of the opinion that there was a fraudulent joinder, and that the plaintiff did not in good faith have any reason to believe when he filed his petition that he could make out a case against the resident defendants, the action should be removed; otherwise not."

We conclude, therefore, that appellant's contention that the case should have been removed to the Federal Court upon the conclusion of the evidence in the trial in the State court, is unsound for the double reason that appellant was not, under the evidence, entitled to a removal, and if it had been so entitled, it waived its right by failing to make the motion opportunely.

2. It is contended on behalf of the appellant that as Robinson was not at the place where he was employed to work, and was not at any place between that point and the entrance to the mine, or at any place where it was necessary for him to go to or from his working place in the mine, and that as he was going to Davis' room only for purposes of his own, the company is in no way liable for his injury, and was entitled to a peremptory instruction.

Appellant relies upon Pioneer Mining & Manufacturing Company v. Talley, 152 Ala., 162, 12 L. R. A. (N. S.), 861, and Brown v. Shirley Coal Company, 94

N. E., 574 (Ind. App.), in support of its contention that
Robinson was not working within the line of his em-
ployment when he went for the Davis tools. The two
cases relied upon, however, are essentially different in
their controlling facts from the case at bar, since in
those cases there was neither allegation nor proof that
the plaintiff was at the point of injury either at the in-
vitation or direction of the coal company, or its officer.
Jones, the mine foreman, had given Robinson express
instructions to see Chumbley about his tools, and Rob-
inson was on his way to see Chumbley about them when
he was stopped and directed to go to Davis' room.

Robinson's situation was like that of the plaintiff in
C., N. O. & T. P. R. R. Co. v. Daniels, 146 Ky., 86, where
Daniels, a brakeman, was injured while "stocking up"
the caboose of a freight train, preparatory to a trip.
He was voluntarily working, without pay, with and un-
der the direction of the conductor; and, under these
facts, the court said:

"Under this evidence we cannot say that Daniels was
a trespasser or volunteer. While, technically speaking,
he was not on duty, and was, therefore, receiving no
pay for his services, yet he was engaged in the perform-
ance of work of a preparatory character, which it was
customary for the rear brakeman to do, and which was
absolutely necessary to be done. He was serving his
master in the spirit of a faithful employe, and it would
be taking too narrow a view of the scope of a servant's
duty to hold that, while so engaged, he was not entitled
to the same protection from injury as the ordinary em-
ploye who is being paid for, and is engaged in the per-
formance of the work for which he was employed."

Furthermore, appellee testified that the company
had undertaken to carry his tools to his entry, where
he was employed to work, and that instead of the com-
pany doing so, Chumbley directed him to go and get
them. The language used by the witnesses, when fairly
read and under the circumstances in which it was used,
seems to bear out the contention of Robinson, that
Chumbley directed him to go and get the tools, and that
it was more than a mere permission to do so. The ef-
fect, however, of the testimony upon this point was
properly submitted to the jury under the third instruc-
tion, which directed a verdict for the defendant in case
the jury should find that Robinson was not at the place

where he was injured pursuant to the command or direction of Jones or Chumbley, nor in the performance of the work assigned to him by the defendants.

To avoid the effect of this testimony appellant contends earnestly that Chumbley had no authority to direct Robinson to get the Davis tools, and his direction to Robinson, if made, did not bind the company. Jones was the mine foreman, with full control of all the mining operations in the mine. But Chumbley says that when Jones was not present, he, Chumbley, was next in control; that he did have the authority; and, as heretofore pointed out, Jones directed Robinson to report to Chumbley. However that may be, it is conceded upon all hands that Chumbley was the boss driver, and had full control of the transportation within the mine, and that as such officer it was his duty to see that the tools were delivered to the men in their respective rooms; whenever the delivery was to be made by the company. If, therefore, it was Chumbley's duty to deliver these Davis tools to Robinson, as Robinson contends, then Chumbley was acting within the scope of his duty when he directed Robinson and Beck to go and get the tools. We are of opinion, therefore, that the court properly submitted the question of Chumbley's authority to act for the company, and that it did not err in refusing to peremptorily instruct the jury to find for the defendant.

3. It is further insisted that the court erred in giving instruction No. 5, which reads as follows:

"The jury may find for one or more of the defendants and against the other or others, or the jury may find separate verdicts for different amounts against one or more, or all of the defendants, or it may find for all the defendants as hereinbefore set out."

Appellant criticizes this instruction, saying it is not only clearly erroneous, but that it is inconsistent with the other instructions given, and left the jury free to find for the individual defendants and against the corporation, without regard to the pleadings or the evidence. The fallacy of this position consists in its erroneous assumption as to the effect of the evidence touching the negligence of the several defendants. It must be admitted that the negligence of Jones and Chumbley, if it existed in either case, was not the same negligence, since they were not acting jointly, and no joint act of the two brought about the accident.

Furthermore, there was evidence tending to show that Jones was notified of the dangerous roof, and promised to remedy it; and there was yet further evidence that the company's officials, superior to both Jones and Chumbley, had failed to furnish the means of properly caring for the roof of the entry. Under this evidence, therefore, the jury could, quite consistently with the facts, have found any one of the defendants guilty of negligence, and at the same time have found the others not guilty. It was necessary, therefore, for the court to instruct as it did, in order that the jury might be able to put the blame where it belonged, by finding for or against one of the other of the defendants. It is the usual instruction given in such cases, and has the approval of long and continued practice.

4. Likewise, it is contended that the verdict is inconsistent, in that it found against the company and in favor of Jones and Chumbley. This criticism is based upon the theory that the negligence of the company consisted solely and entirely in the negligence of Jones and Chumbley. We have just shown, however, that this is not an accurate statement of the effect of the evidence, since there was evidence tending to show that each of the defendants was independently negligent. But, if if it were otherwise, and the negligence of the company consisted solely and entirely of the joint negligence of Jones and Chumbley, as appellant contends, the verdict must, nevertheless, be sustained.

This question has been before this court in the case of I. C. R. R. Co. v. Murphy, 123 Ky., 787, and in the later case of C. & O. Ry. Co. v. Booth, 149 Ky., 245. In the Booth case the court passed the question and determined, that since the negligence in that case might have been due to some other agent than the engineer, who was joined as a defendant, the principle contended for had no application. But, in the Murphy case, the question was squarely presented and decided. Appellant contends, however, that since the verdict in the Murphy case was merely silent as to the servant, who had been joined as defendant, the ruling in that case is not controlling here, where there was an express finding for the servants, Jones and Chumbley. It is apparent, however, that the failure to find for or against the individual defendants in the Murphy case was treated as equivalent to a finding in their favor; and, that being true, the

principle of that case is controlling here.   In the Murphy case we disposed of the question in the following language:

"We can think of cases where possibly the engineer ought to be held to the stricter account, and *vice versa;* but let that be as it may, if the plaintiff is entitled to his verdict against two tort feasors, but the jury are able to agree only as to one of them, and gives a verdict accordingly, we know of no law that prevents the plaintiff from having at least what the jury has given him. If he failed to get the verdict against another also liable, the plaintiff may be aggrieved, but not the defendant."

We adhere to the ruling there made.

It is further insisted, by appellant, that it should be given an opportunity to recover from Jones and Chumbley whatever sum it may have to pay appellee for their negligent acts, and that the verdict in this case precludes it from doing so.   That question, however, is not before us.   The appellant appealed from the judgment against it, but the plaintiff Robinson did not appeal from the judgment in favor of Jones and Chumbley. Assuming that Robinson's injuries were caused solely by the negligence of Jones and Chumbley, for which appellant as their principal is liable, appellant is, nevertheless, not precluded by the judgment herein from asserting against them a claim for whatever sum it may be required to pay Robinson by reason of their negligence.   That question was before us in M. H. & E. R. R. Co. v. Owen, 147 Ky., 1.   In that case Owen sued the railroad company for damages, based upon the negligent construction of its roadbed; and the company in turn filed its cross-petition against the general contractors who had the contract for building the road; and the general contractors, in turn, filed their cross-petition against the subcontractors who actually did the work. The issue submitted to the jury was, whether the negligence of the railroad company, the general contractors or the subcontractors caused the damage sustained by the plaintiff.   There, as here, a verdict was returned against the railroad company and in favor of the general contractors and the subcontractors; and, in response to the argument now made, this court held that the action brought by the plaintiff did not, and could not, settle the rights of the defendants as between themselves, saying:

"Under the interpretation put by the court, and correctly, as we have indicated, upon the relation existing between the sundry parties to these contracts, the trial had was simply a trial of the right of the plaintiff, Owen, to recover for his damages. If the railroad company claims any right against the Walton, Wilson, Rodes Company, or if the latter company should ultimately claim any right against Williams, Kohler & Barrier, those rights are open to litigation and are not concluded by the judgment below."

See, also Southern R. R. Co. v. Carson, 194 U. S., 96; T. & P. Ry. Co. v. Huber, 95 S. W. (Tex.), 568, to the same effect.

Again, in Pullman Car Co. v. C., N. O. & T. P. Ry. Co., 147 Ky., 498, Ward had sued the Pullman Company and the railroad company for their joint negligence, and recovered a judgment against the railroad company only; whereupon the railroad paid the judgment and sued the Pullman Company, claiming it was primarily liable for the injury to Ward. In considering the same question now before us, this court said:

"It is insisted for the Pullman Company that the judgment in its favor in the United States Court when sued by Joel H. Ward is a bar to this action by the railroad company against it to recover the money which Ward recovered from it in that action. But the Pullman company and the railroad company were not adversaries in that case. Ward controlled the evidence that should be introduced there. If he made out his case there against the railroad company, and did not make out his case against the Pullman Company, this cannot affect the rights of the railroad company to recover in this action against the Pullman Company, if it now shows facts sufficient to warrant a recovery; for Ward might have sued the railroad company alone or he might have dismissed his action against the Pullman Company, and in either of these cases the railroad company, if held liable to Ward, might have maintained an action to recover from the Pullman Company. If Ward, instead of dismissing his action, failed to introduce evidence to sustain it, the result is the same. The railroad company could recover no judgment against the Pullman Company in that case, and its right to recover here is not affected by the fact that Ward failed to recover against the Pullman Company."

We conclude, therefore, that if we should concede Robinson's injuries were caused solely by the negligence of Jones and Chumbley, the finding of the jury in their favor does not invalidate the judgment against their master, or prevent the master from recovering, in turn, against them in a proper proceeding brought for that purpose.

5. As to the contention that the verdict is excessive, little need be said to show the contrary. In actions for personal injury the measure of damages includes, (1) compensation for pain and mental suffering, (2) expenses of nursing and medical attendance, (3) time lost, and (4) if the injury has lasting effects, permanent diminution of earning capacity. Furthermore, personal injury imports pain and suffering, and to sustain a substantial verdict therefor they need not be proved. Pratt v. Davis, 224 Ill., 300, 7 L. R. A. (N. S.), 609.

The appellee had both legs broken, resulting in the amputation of one of them, accompanied by a long confinement, and intense pain and suffering. His injuries are permanent; and, in view of the many and recent decisions of this court with respect to the amount of recovery in such cases, it becomes unnecessary to go into the question in detail. A mere reference to some of the later cases approving verdicts for permanent injuries of a similar nature will be sufficient.

L. & N. R. R. Co. v. Cason, 116 S. W., 716 ($10,170);
L. & N. R. R. Co. v. Shelburne, 117 S. W., 303 ($8,000);
Eilerman v. Farmer, 118 S. W., 289 ($5,000);
L. H. & St. L. Ry. Co. v. Armstrong, 125 S. W., 276 ($5,000); L. & N. R. R. Co. v. Daniel, 131 Ky., 689 ($11,000); L. & N. R. R. Co. v. Smith, 135 Ky., 462 ($12,500); Price & Lucas Co. v. Haley, 137 Ky., 305 ($9,000).

For a discussion of the question, see the late case of the Kentucky Distilleries & Warehouse Co. v. Wells, Guardian, 149 Ky., 275.

Judgment affirmed.