## Wilburn v. Simons et al.

## Legg v. Same.

June 11, 1946.

Rehearing denied October 4, 1946.

754

J. Ballard Clark and H. Elliott Netherton for appellants.

Mahan & Mahan and Edwin Davis for appellees.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

Edward C. Simons, appellee, recovered judgment against Drufle T. Wilburn and Tilmer Legg, appellants, for $750 for property damage and personal injuries growing out of an automobile collision.

Thelma Collier, another appellee, recovered judgment against the same appellants for $4000 for personal injuries growing out of the same collision.

The two cases were consolidated for trial and upon rendition of the judgments against them, both appellants prosecuted their appeals, which now form one consolidated record for this court's consideration.

Wilburn's grounds for reversal are that (1) he was entitled to have had a peremptory instruction in his favor on the trial and that (2) the trial court's instructions were erroneous to the prejudice of his substantial rights and that (3) the trial court erred in refusing to give certain instructions offered by Wilburn.

Legg's grounds for reversal are two in number and are identical with Wilburn's first two grounds.

Wilburn with his wife and granddaughter were driving in his car westward toward Louisville on U. S. Highway 42. Simons and Collier were driving in the same direction and on the same highway in Simons' car about two or three car lengths behind the Wilburn car. Legg, a colored employee of Warner Jones, Jr., was driving Jones' car eastward toward Cincinnati along the same highway. Legg was accompanied by his girl friend and was on a joy ride without the consent of Jones. The occasion was on a Sunday afternoon in fair weather. Wilburn lived on the southward side of this highway and the driveway entrance to his place was a short distance east of the crest of a hill that sloped eastward past the Wilburn driveway. In each direction past the driveway a yellow barrier line had been painted to warn westbound traffic to stay in the westbound lane until reaching the crest of the hill. In addition, there was a State

Highway Department sign toward the foot of the slope and east of the driveway with the words, ''No passing for 500 feet.'' When Wilburn approached his driveway, he slowed down, and at a place about 42 feet east of his driveway entrance, he began leaving the westbound traffic lane and began entering the eastbound lane for an angular approach to his entrance. As Wilburn was entering or was about to enter the driveway, Legg came over the crest of the hill and collided first with the Wilburn car and then with the Simons car with the result that Simons and Collier were both injured, the latter seriously, and the Simons car was damaged substantially. There was no contact whatever between the Wilburn and Simons cars.

Some evidence indicates the Wilburn entrance is 85 feet east of the crest of the hill, while other evidence places it at about 270 feet east of the crest.

Some evidence indicates Legg's speed was from 30 to 40 miles per hour, while other evidence indicates his was ''a terrific speed.''

Some evidence indicates Wilburn turned left just as Legg reached a distance of about 36 feet from Wilburn, while other evidence indicates Wilburn had already begun to make his left turn and was about to enter his driveway when Legg came over the crest of the hill at a distance of at least 85 feet away from Wilburn.

Some evidence indicates Wilburn could have seen Legg, or vice versa, when the two cars were three or four hundred feet apart, while other evidence indicates there may have been no vision between the cars immediately before the collision over a greater distance than about 85 feet.

Some positive evidence indicates Wilburn extended his hand in prior warning of his intention to make the left turn into his driveway, while other negative evidence indicates no such warning was given.

There was no evidence that Wilburn's speed was excessive.

There was no evidence of any negligence whatever on the part of Simons or Collier.

Wilburn contends that Legg's negligence was the sole cause of the accident. Legg contends that Wilburn's

negligence was the sole cause of the accident. Simons and Collier contend that the joint negligence of both Wilburn and Legg was the cause of the accident. The jury agreed with Simons and Collier.

A peremptory instruction for Wilburn would not have been proper. It was his duty to signal his intention of making a left turn by extending his hand and arm horizontally over the last 100 feet before making the turn. KRS 189.380. There was some evidence, although negative in character, that he did not perform that duty. But we have held that where there is positive and negative evidence on the question of whether statutory warning signals were given, an issue is thus formed for a jury's decision. Collett's Guardian v. Standard Oil Co., 186 Ky. 142, 147, 216 S. W. 356; Cincinnati N. O. & T. P. R. Co. v. Jones' Adm'r., 166 Ky. 817, 820, 179 S. W. 851. While it is possible that Wilburn's failure to give the left turn signal, if there was such a failure, may not have been the proximate cause of the collision, yet there remains the other possibility that such failure may have been the exact and efficient cause of the collision. We are led to this conclusion by Legg"s testimony as follows:

"Q. You say you got up to within 36 feet of Mr. Wilburn's car before he started to turn? A. Before I could see him turn.

\* \* \* \* \* \* \*

"Q. You mean to tell the jury when you got within 36 feet of him he turned his car right smack in front of you? A. Yes, sir, he turned across the road in his entrance."

There was also some evidence of negligence on the part of Wilburn through his own admission that he drove a distance of 42 feet in or partly within the eastbound traffic lane before he reached his driveway. Wilburn testified that he made his left turn in that manner. Of course, he had every right to enter his driveway regardless of its dangerous location, but his manner of doing so should have been by turning at a safe and prudent angle, and especially is this true under the circumstances of another vehicle following him and of his nearness to the crest of a hill. It is the duty of a car driver to keep off of the left side of a highway when he approaches the crest of a hill. KRS 189.340. While this does not mean

that a driver could not turn left to enter a driveway just in front of the crest of a hill, yet it does mean, we think, that a driver should necessarily exercise care under these circumstances and turn at a reasonably safe angle. Whether Wilburn did turn in that kind of a prudent manner if he traveled, as he said, a distance of 42 feet on the left side of the highway before he entered his driveway is a question for the jury's determination.

Legg himself also contends that the trial court should have directed a verdict in his own favor. We can not agree. There was some evidence that he was traveling at "a terriffic speed." And if he was so traveling over or near the crest of a hill, such may have been negligence under all the proven circumstances and may have been a violation of his duty to drive reasonably and prudently. KRS 189.390. Legg takes the position that the evidence relating to his travel at "a terrific speed" constituted a conclusion rather than an element of competent evidence. However, we have held that testimony that a motor vehicle was going "real fast" was competent evidence. Consolidated Coach Corp. v. Earls' Adm'r, 263 Ky. 814, 94 S. W. 2d 6. Of course, the competency of such evidence may reasonably rest upon the past experience of the witness in observing motor vehicles and their speeds. In the present instance, the witness was Wilburn himself, who said he had been driving automobiles since 1918, more than 25 years. Such an experience surely established his qualification as a speed witness in this case. Looking still further at the evidence of this case, it seems that Legg's own testimony fixing his speed at 30 to 40 miles per hour while going over the crest of the hill at this place of accident made out its own prima facie case of negligence against him under the provisions of KRS 189.390, which mentions a speed limitation of 25 miles per hour on a steep grade either in or outside a city. Therefore, because there was some competent evidence to prove that Legg was driving at an improper, unreasonable and negligent speed immediately before the occurrence of this accident, the trial court properly overruled Legg's motion for a directed verdict.

Now, looking at the court's instructions and any defects that may appear therein, we find that Instruction I told the jury that the law was for Simons and Collier

and that a verdict should be returned for them within the limits of the damages sought. The instructions did not tell the jury that it might return a verdict against Wilburn and Legg, either one of them or both. The inference left in the instruction seems to have been that a verdict had to be returned against both Wilburn and Legg without the possibility of an elimination of either. At no place in the complete set of instructions was the jury informed that it might return a verdict against only one or against both defendants on trial. No clear and definite chance to choose between these joint defendants was given to the jury upon its possible election to make such a choice. This was error to the prejudice of both Wilburn and Legg. When two defendants are sued for negligent conduct and the evidence is conflicting as to which is responsible, it is for the jury to determine the question and it may find for one and against the other. Broadway Coal Mining Co. v. Robinson, 150 Ky. 707, 150 S. W. 1000; Louisville Bridge Co. v. Sieber, 157 Ky. 151, 162 S. W. 804; Louisville Gas etc. Co. v. Nall, 178 Ky. 33, 198 S. W. 745. For a correct instruction giving the jury the chance to assess damages against a plurality of defendants or to make a choice among them or between them, see Stanley's Instructions to Juries, Sec. 603, Joint Defendants, page 777.

Our attention has also been directed to Instruction III telling the jury, in sum and substance, that Wilburn was guilty of negligence as a matter of law because he drove his car to his left side of the highway at the place of accident, such place being located just in front of the crest of a hill where a yellow barrier line had been painted and where a highway sign had been erected warning Wilburn and others to keep within the westbound lane at that location. It is good basic common sense to assume and declare that Wilburn had a full and perfect right to enter his own driveway, regardless of its location near the top of a hill, regardless of the clear necessity of crossing to the left of a yellow barrier line in order to make that entrance. Of course, Wilburn may have driven negligently in getting into his driveway. But the question of whether he did or did not was one for the jury's decision. He had to drive to the left of the center line and barrier line to get to his own driveway. As to whether he drove so far and so long along the left side as to convict himself of imprudence, the jury should

have been left free to determine. Instruction III was, in practical effect, a peremptory instruction against Wilburn. Under the evidence of this case, we do not believe a peremptory instruction for or against Wilburn or for or against Legg was proper. It was a jury case. Because of the indicated iniquity in Instruction III, the trial court committed error to the prejudice of Wilburn.

In pointing out errors in the court's instructions we have, we believe, sufficiently dealt with Wilburn's third ground for reversal, viz., the possible propriety of giving certain instructions offered by Wilburn. On a second trial, the court will doubtless submit a full and adequate set of instructions, defining the statutory duties of both Wilburn and Legg in a clear summarization, leaving the jury free to determine whether to assess damages against one or both and leaving it free to determine whether Wilburn's method of driving or of entering his own driveway on the occasion of this unfortunate accident was negligent or otherwise.

Because of the trial's prejudicial errors, to which we have attempted to refer in specific detail above, the judgment is now reversed.