Roy L. ADAMS, Appellant,

v.

Rebecca FECK, Appellee.

Roy L. ADAMS, Appellant,

v.

William FECK, Appellee.

Court of Appeals of Kentucky.

June 7, 1957.

Allen Prewitt, Billy Todd Cheshire, Frankfort, for appellant.

William A. Young, Frankfort, for appellees.

STEWART, Judge.

This is an automobile accident case which involves chiefly a determination of the rights and duties of a person turning off a highway to his left in front of oncoming traffic.

On July 1, 1955, William Feck, accompanied by his wife, Rebecca Feck, was departing from Frankfort and driving out Kentucky Highway No. 35 toward Owenton, at about 5:00 p. m. (DST). Both of the Fecks are around 70 years of age. The Feck home is on the left-hand or west side of the road, and the Feck driveway is located at the top of a slight hill. William Feck slowed down as he drew near the driveway

and flicked on his electric directional indicator. However, he did not, according to his own testimony, use his indicator for the full 100 feet before turning, as is required by KRS 189.380(2). He stated he brought his automobile to a complete stop 10 or 15 feet before he was opposite his driveway, looked in both directions along the highway, saw no traffic coming from either north or south, and then started across the other lane of the highway at an angle of "maybe 60 degrees". When the front end of the Feck automobile had passed some 4 to 6 feet to the west of the center line, traveling very slowly, William Feck said he first saw the automobile of Roy L. Adams emerging from a curve about 180 feet to the north of him. He undertook to hasten on across the roadway out of its path but he was unable to make it. Adams skidded his tires a distance of 117 feet uphill and crashed into the right front side of the Feck automobile, which was then partially off the highway. Rebecca Feck supplied the testimony as to Adams' speed. In her words, " * * * he was just flying." It was also shown Adams had been drinking but there was no indication his driving ability was impaired in any manner.

Adams testified he observed the Feck automobile for the first time when a distance of 375 or 400 feet separated the two vehicles. The Feck car was then 150 feet south of the driveway and had pulled over on the left side of the highway, Adams thought, as if to pass another vehicle preceding it. According to him, he "couldn't have been making over 50 miles an hour". This was 10 miles per hour less than the speed limit for that area. He stated he applied his brakes to slow down his automobile and to permit the Feck automobile to get around two cars which Adams thought it was attempting to pass. He said he later realized that William Feck, who turned out to be the driver of his car, was not going to get back on his side of the road. Here follows Adams' testimony as to what next occurred: " * * * I wasn't moving too fast when I hit him because I was braking my car all the time, and when he got within about 30 feet of me why it looked like he wasn't going to get out of the way, so then he started to pull over and I had to stay right in my lane, I couldn't get on the other side because there was traffic on the other side. * * *"

There were no eyewitnesses to the accident other than the parties involved. Neither William Feck nor Adams was seriously injured. Rebecca Feck received a badly fractured wrist, two broken ribs, and certain bruises. The damage to both vehicles was extensive, as attested by the photographs which appear as exhibits in the record. The Fecks sued Adams for their damages. In his answer Adams denied that he was negligent, pleaded that the Fecks were contributorily negligent, and averred that the negligence of William Feck was the sole cause of Rebecca Feck's injuries. Adams did not counterclaim. The jury returned a verdict in favor of William Feck for $550 for his car damage and in favor of Rebecca Feck for $5,140 on her personal injury claim. Adams has appealed directly from the $5,140 judgment and has filed a motion for appeal from the other judgment. Since the cases were consolidated below, we will consider them together.

Adams urges these grounds for reversal: (1) That the negligence of William Feck was the sole cause of the accident and that both he and Rebecca Feck were contributorily negligent; (2) that the award to Rebecca Feck of $5,140 for pain and suffering and permanent damage to her wrist was excessive; (3) that the instructions were erroneous; and (4) that certain comments made by the Fecks' lawyer in his closing argument were prejudicial. Adams' chief ground for reversal is (1) above and we will therefore consider it in some detail.

It is Adams' primary contention, relying upon subsections (1) and (2) of KRS 189.380, that the accident was entirely

the fault of William Feck because he pulled to the left in the path of the Adams car (a) without ascertaining that the left turn could be made with reasonable safety and (b) without giving any indication for 100 feet of his plan to cross the left traffic lane. The above statute imposes a double duty on a driver who wants to change the direction of his vehicle. First he must ascertain that his movement from his lane of traffic can be made with reasonable safety, and then he must signal his intention to turn right or left "continuously for not less than the last one hundred feet traveled by the vehicle before turning." The argument of the Fecks is that the great speed at which Adams was traveling, thus making it impossible for him to control his automobile when suddenly confronted by their car, was the proximate cause of the wreck.

It has been pointed out, and the reason is obvious, that the signals required by the applicable statute need not be given unless the movement of another vehicle might reasonably be affected by the failure to do so. Manifestly, if an approaching vehicle is not in sight when a turn to the right or left on a highway is made, the flashing of the turn indicator would be a futile gesture. See Lehr v. Fenton Dry Cleaning & Dyeing Co., 258 Ky. 663, 80 S.W.2d 831. It will be remembered that William Feck testified Adams' automobile had not made its appearance around a curve, which is approximately 180 feet north of the driveway, when he commenced his turn to his left. Therefore, if one accepts as true the statement of William Feck that he started heading toward his driveway before the Adams car came into view, and evidently the jury believed his testimony in this respect, William Feck did not violate any of the provisions of subsections (1) and (2) of KRS 189.380.

Furthermore, if William Feck had started across the highway when the Adams car was still 180 feet to his north, he was complying with KRS 189.300(1) which provides that the operator of an automobile shall keep to the right side of the road "unless the left side of the highway is clear of all other traffic or obstructions and presents a clear vision for a distance of at least one hundred and fifty feet ahead." It would seem that the Legislature itself has established 150 feet as a reasonably safe margin of distance for the beginning of a left or right hand turn off a highway, unless some other condition makes it evident that such a margin is too narrow. In the light of William Feck's testimony that he had a clear view ahead as far as 180 feet and could see no other traffic coming toward him, it might be presumed he came within the protection afforded by KRS 189.300(1) when he made his turn.

■ However, assuming arguendo William Feck was guilty of negligence per se because he did not signal his turn for the statutory distance, still Adams could not rely upon such negligence as a defense if the jury did not believe it was a proximate cause of the mishap. Proximate cause is that cause which leads to, and which might be expected to have produced, a given result. See Rutherford v. Smith, 284 Ky. 592, 145 S.W.2d 533, 535. The Rutherford case, in fact, is strikingly similar to the one under discussion. In that case, involving litigation growing out of the collision of a turning car with one approaching, there was testimony that Collins, the person driving the oncoming car, was speeding and it was conceded that Smith, the person who was turning his automobile when it was struck, did not indicate his turn for the distance required by the statute. After holding the jury could find that Collins, the driver of the approaching car, did not have his car under proper control, or was not keeping a reasonable lookout, or was traveling at an excessive rate of speed, and that a failure to comply with one or all of these duties on his part was the cause of the collision, this Court in that case went on to say: "They [the jury] were further justified in finding that negligence on appellee's [Smith's] part was not the proximate cause of, or contributing cause to, the collision." See also Hilsenrad v. Bowling,

292 Ky. 368, 166 S.W.2d 847. It should be added that no signal was given in the Hilsenrad case.

An evaluation of the evidence points up these facts from which a jury might conclude Adams was solely to blame for the accident. There was proof tending to show that he was speeding and that he did not have his car under reasonable control when the wreck occurred. We have the statement (made at least twice) by Rebecca Feck that "he was just flying". Testimony that one's manner of travel was "terrific" or that one was going "real fast" was held to be competent in Wilburn v. Simons, 302 Ky. 752, 196 S.W.2d 356, to establish an excessive rate of speed. In this connection, there was also the evidence of the rather long skidmarks, described above, and here the braking that produced them was uphill and then, too, the braking did not bring the Adams car to a halt before it collided with the Feck automobile. In addition, the extensive damage inflicted on both automobiles would seem to indicate Adams' car was still traveling with considerable momentum at the moment of the impact. There was, furthermore, Adams' own testimony from which one might infer he failed to act promptly to bring his car under control when he saw a dangerous condition shaping up ahead of him. He stated he first observed the Feck automobile when it began making a turn into his traffic lane while Adams was yet some 375 or 400 feet away. He asserted this was before the Fecks were opposite their driveway. He insisted he thought William Feck intended to pass two other cars traveling ahead of him, with the result that he started braking his car to merely lessen its speed. Nevertheless, the Feck car remained on Adams' side of the road, and this fact should have alerted Adams to the necessity of slowing down to such a speed that he could have stopped his car within a few feet when it became apparent William Feck intended to turn.

Our review of the evidence leads us to the conclusion that the lower court properly allowed the jury to pass on the questions of negligence and proximate cause in the case at bar.

■ The assertion is next made that damages of $5,140 awarded Rebecca Feck were excessive. We believe this contention is without any merit. This person had two broken ribs and a badly fractured right arm as a result of the accident. She carried her arm in a cast for five weeks and, when the cast was removed, the wrist was found to be "jammed", i. e. the arm was shortened. At the time of the trial, nearly four months after her injury, she was unable to lift anything with her right hand; nor could she iron, wash dishes, or perform adequately any of the other ordinary tasks of a housewife. The medical testimony established that her wrist would never get much better and that she would continue to suffer pain therefrom. In these days of the devalued dollar, we cannot say that the verdict in her favor was so excessive as to show passion or prejudice. It should therefore stand.

■ Reversal is also urged because the trial court refused to submit a more detailed instruction regarding Rebecca Feck's alleged contributory negligence than the one given, which was the standard instruction on the subject. Adams' counsel maintain this person testified her husband ordinarily entered the driveway with his directional lights operating the same way each time, that is, without having his turn indicator on for the required distance. It is argued that, since Rebecca Feck admitted the so-called negligent manner in which her husband always drove into the driveway on each occasion, and she nevertheless continued to ride with him as passenger, the jury should have been allowed to say whether she was guilty of contributory negligence for these reasons. We conclude the instruction insisted upon was properly rejected, first, because Rebecca Feck's testimony, taken as a whole, does not support the inference that Adams' counsel deduced from it and, second, because it cannot be assumed the same

conditions obtained on the highway each time William Feck turned therefrom into his driveway.

Coming now to the last complaint, it is claimed the attorney for the Fecks made certain remarks in his closing argument that were highly prejudicial. We have read the statements objected to and we fail to conceive, and it is not pointed out, how or why the statements in question were even improper under the circumstances.

Wherefore, both judgments are affirmed.