Jean Marie WANDLING, Appellant,

v.

Marlin C. WANDLING et al., Appellees.

Court of Appeals of Kentucky.

May 25, 1962.

CULLEN, Commissioner.

Jean Marie Wandling, wife of Marlin Wandling, sued her husband and Abe Harrison to recover damages for personal injuries she claimed to have sustained in a collision between the Wandling car, in which she was a passenger, and a car driven by Harrison. The case was submitted to a jury which returned a verdict for the defendants. Judgment was entered accordingly and Jean has appealed.

The two automobiles were proceeding in opposite directions on a straight stretch of highway, at night. Harrison commenced a left turn into a school driveway, then decided that he would not be able to complete the turn, and stopped his car partly across the Wandling car's traffic lane. Wandling applied his brakes and swung to the right but the left front of his car struck the left front of the Harrison car.

As concerns Jean's claim against her husband any errors that occurred upon the trial could not have been prejudicial, because in our opinion she had made a judicial admission of his lack of negligence such as to entitle him to judgment as a matter of law. His several motions for such a judgment were, we think, improperly overruled.

In a pretrial deposition, and in her testimony on the trial, Jean said that her husband had his car under complete control, that he was not going at an excessive rate of speed, and that the Harrison car "turned right in front of us." By this testimony Jean completely absolved her husband of any negligence, so as to entitle him to judgment on the basis of a judicial admission. Bell v. Harmon, Ky., 284 S.W.2d 812.

With respect to her claim against Harrison Jean's first contention is that she was entitled to a directed verdict. However she did not move specifically for a directed verdict against Harrison. She did request an instruction, which was given, informing the jury that they must find a verdict against either Wandling or Harrison or against both of them. But this instruction was practically nullified by the giving of other instructions, over Jean's objections, authorizing the jury to find Jean contributorily negligent.

As relate to contributory negligence the facts in this case are not distinguishable from those in Beasley v. Evans' Adm'x, Ky., 311 S.W.2d 195, where it was held error to give a contributory negligence instruction. Accordingly, we hold that the giving of the contributory negligence instructions here was error.

Since the case must be reversed for a new trial against Harrison because of the erroneous instructions and since upon that trial the question of whether a verdict should be directed against Harrison most certainly will arise, we deem it proper to express our opinion that the evidence in the

record before us establishes that Harrison was negligent as a matter of law.

It is true that in a number of cases where a motorist turned left across the path of an oncoming vehicle it has been held that the question of negligence of the left-turning motorist was for the jury. But in every one of those cases there was evidence of excessive speed of the oncoming vehicle, and the speed was a factor in the accident either because it brought the oncoming vehicle suddenly into view after the turning motorist had made a reasonable lookout ahead, or because the turning motorist did not realize how excessive the speed was until after he had committed himself to the turn. For example, in Jackson v. Shipley, Ky., 312 S.W.2d 627, the turning motorist testified that before he commenced his turn he looked ahead and in the 780-foot range of his view there was no approaching vehicle; he began his turn and then saw a car "coming down the road at the highest rate of speed I had ever seen." In Beasley v. Evans' Adm'x, Ky., 311 S.W.2d 195, the turning motorist said that he first looked and saw no car approaching, and then after he had started his turn he saw a car coming, 100 or 125 yards away, at 80 miles an hour or more. In Adams v. Feck, Ky., 303 S.W.2d 287, the turn was attempted at a place 180 feet from a curve; after the turn was commenced a car came around the curve "just flying;" there was physical evidence of excessive speed in the fact that the car skidded 117 feet uphill and struck the turning vehicle with a terrific impact. In Pillsbury-Ballard v. Scott, Ky., 283 S.W. 2d 387, the turn was attempted 350 feet from a curve; no vehicles were in sight when the turn was begun but when the turning car was halfway across the road a car came around the curve at 80 miles an hour.

In the instant case both of the Wandlings testified that their car was going 50 miles an hour, and the only evidence of excessive speed consisted of Harrison's statements that it looked to him to be coming "at a pretty fast rate of speed" or at "a pretty good speed.". However, when asked to estimate a specific rate of speed he said he "couldn't say that," and when asked whether the speed was faster than that of other cars traveling the highway on that occasion he gave the equivocal answer that "I don't know that there was any other cars along there at that time.".

We have doubt whether Harrison's estimates of the speed of the Wandling car as being "pretty fast" or "pretty good" were of any value as proof of an excessive speed. It is true that in Consolidated Coach Corporation v. Earls' Adm'r, 263 Ky. 814, 94 S.W.2d 6, this Court held competent a statement of a witness that a bus was going "real fast", but it appears that this was considered as bearing only on the question of whether the bus was going swiftly as distinguished from slowly. And in Wilburn v. Simons, 302 Ky. 752, 196 S.W.2d 356, a statement that a vehicle was going at a "terrific" rate of speed was held competent, but certainly "terrific" is much more indicative of an excessive speed than is "pretty fast."

However, even if it be considered that Harrison's statements did constitute acceptable evidence of high speed, the significant fact in this case is that Harrison was aware of the speed at all times and there was no reason for him to have been misled or trapped by reason of the speed. He testified that he first observed the Wandling car when it came over a rise 1,000 feet away and that it *then* looked to him to be going at a "pretty fast rate of speed." With knowledge that the Wandling car was approaching at a high rate of speed Harrison must have known he could not venture a left turn with reasonable safety. See KRS 189.380(1).

Even if Harrison's testimony should be construed as saying that he did not actually become aware of the extent of the speed of the Wandling car until after he had commenced his turn, there is no escape for him from his inexcusable act of *stopping* across the lane of the Wandling car. The evi-

dence indicates that when he stopped the Wandling car was at least 150 feet away. Even going as slowly as 10 miles an hour Harrison could have cleared the 8-foot lane in one second. The Wandling car would have to have been going 100 miles an hour to travel 150 feet in a second. There is no suggestion it was going anywhere near that fast.

Our conclusion that Harrison was negligent as a matter of law is supported by Smith v. Sizemore, Ky., 300 S.W.2d 225, and Hollar v. Harrison, Ky., 323 S.W.2d 219.

As to the appellee Marlin Wandling the judgment is affirmed; as to the appellee Harrison the judgment is reversed with directions for a new trial as against him alone, upon which, if the evidence be substantially the same, the court will direct a verdict of liability to the plaintiff.